IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEE KNOWLIN,

                Plaintiff,　　　　　　　　　　　　　　　　ORDER

       v.　　　　　　　　　　　　　　　　　　　　08-cv-745-bbc

RICHARD RAEMISCH, Department of
Corrections Secretary; BRAD HOMPE,
Warden of Stanley Correctional Institution;
R. RICHARDSON, Security Director of
Stanley Correctional Institution;
JAMES TOTKA, Captain of Flambeau
Correctional Center; and MARK HEISE,
Director of Offender Movement and
Classification;

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights case, plaintiff Lee Knowlin is proceeding on a claim that defendants are failing to protect him from a substantial risk of assault by other prisoners, in violation of the Eighth Amendment. <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). Plaintiff filed a motion for a preliminary injunction on February 17, 2009, in which he seeks a transfer from the Stanley Correctional Institution "to another Wisconsin Correctional Institution." Dkt. #12, at 1. Defendants filed their opposition to this motion on March 10.

1

In his complaint, plaintiff alleged the following:

- in 2004, he was assaulted at Stanley Correctional Institution by a prisoner gang member after refusing an extortion attempt;

- in 2006, plaintiff was transferred from the Stanley prison because various "unknown associates" of the gang member threatened to harm plaintiff;

- in September 2008, plaintiff was transferred back to the Stanley prison, despite information defendants received that plaintiff had been transferred in 2006 because of threats to his safety;

- in October 2008, plaintiff received threats from "associates" of the gang member at the Stanley prison; although plaintiff complained to defendants about these threats, defendants refused to take any action.

Some of these facts are borne out by the parties' proposed findings of fact, some are not and some remain unclear. In light of the facts that plaintiff proposed and those facts that are uncertain, I conclude that an evidentiary hearing is necessary to resolve plaintiff's motion.

It is undisputed that plaintiff was assaulted by another prisoner in 2004 while at the Stanley prison; he was transferred from Stanley in 2006; and he complained to defendants after he was transferred back in 2008 that several prisoners who had previously threatened him were still housed at the prison. It is also undisputed that defendants conducted an

2

investigation of plaintiff's allegations in October 2008 and concluded that "there is no evidence that [the prisoners plaintiff is complaining about] are threatening" plaintiff. Dkt. #22-2, Exh. 1003.

Unfortunately, defendants' investigation leaves some questions unanswered. For example, plaintiff proposes a fact that one prisoner approached him in October 2008 and told plaintiff that he "and the Gangster Disciples will plan an attack against [plaintiff]" and that "staff can't protect [plaintiff] from the Gangster Disciples and their associates because they are on every housing unit" of the prison. PPFOF ¶¶27, dkt. #14. Also, plaintiff says that he complained to defendants Hompe and Richardson about this threat in an "Information Request Slip." Id. at ¶28. Defendants object to these proposed facts on the ground that they are "unsupported by admissible cited evidence," but they fail to explain this objection. Plaintiff cites his own affidavit for these facts and I see no reason why plaintiff would not be competent to testify about his own observations.

Further, defendants do not address this specific threat in their investigation report. This may be because plaintiff did not identify the threat to defendants; neither side has submitted the "Information Request Slip" that plaintiff discusses in his proposed findings of fact. However, plaintiff's failure to submit the slip could be explained by his statement that defendants never responded to the request, which would mean that the slip was never returned to him. Thus, plaintiff has raised a credibility issue that cannot be resolved on

3

paper. If plaintiff is telling the truth that a particular prisoner has made a specific threat to him and defendants simply ignored that threat, this would support a finding that plaintiff is entitled to relief.

The record remains unclear regarding the reason that plaintiff was transferred from the Stanley prison. If plaintiff is correct that he was transferred as a result of threats other prisoners made to him, this might raise a question about whether plaintiff is safe there now. However, the only evidence that plaintiff submits is his own affidavit, in which he says that the security director transferred him because of a letter that plaintiff wrote and because of an incident report by a prison lieutenant named Sharp that corroborated plaintiff's account of the threats. Plaintiff did not submit the incident report or the letter, but even if he had, it would not establish that the security director had relied on these documents to transfer plaintiff. Plaintiff's own testimony on this issue is inadmissible because he fails to show that he has personal knowledge of the security director's reasons for the transfer.

Although plaintiff's evidence on this point is not admissible, defendants fail to address it *at all.* This silence is curious in light of plaintiff's heavy reliance on his perception of the transfer, both in his grievances and in this lawsuit. If defendants have evidence that plaintiff's transfer was unrelated to threats of violence at the Stanley prison, why have they not come forward this evidence?

Accordingly, I will schedule an evidentiary hearing in which the parties should be

prepared to submit evidence on the following questions:

- Why was plaintiff transferred from the Stanley prison in 2006?

- What information did plaintiff provide to defendants regarding threats he has received since being transferred back to the Stanley prison?

- Why did defendants fail in their investigation report to address the specific threat plaintiff alleges?

- Is there any evidence corroborating or undermining plaintiff's allegation of the threat, for example, information about this prisoner's disciplinary history?

- Assuming that I found it credible that plaintiff has been threatened by a particular prisoner as he says he has, how would defendants respond to such a threat? In other words, what is a reasonable response to a specific threat by a prisoner that a gang is planning an attack against plaintiff?

- Has plaintiff received any threats since October 2008 or does he have any other new information that would support a view that he is at risk now?

At the evidentiary hearing, it will be plaintiff's burden to prove that he has a reasonable probability of proving at trial his claim that he faces an imminent threat of physical harm and that he will be irreparably harmed if an injunction does not issue. Pelfresne v. Village of Williams Bay, 865 F.2d 877, 883 (7th Cir. 1989). If plaintiff makes both of these showings, the court will allow the parties to introduce evidence on the

5

questions whether the threatened injury plaintiff faces outweighs the threatened harm an injunction may inflict on defendants and whether the granting of a preliminary injunction will disserve the public interest.

I presume that plaintiff will testify on his own behalf. Therefore, I will direct the Clerk of Court to issue a writ of habeas corpus ad testificandum for his attendance at the hearing.  Because neither party relied on the affidavits of other prisoners in their written submissions, I presume that neither side intends to call other incarcerated witnesses at the hearing.

The presence at the hearing of at least one of the defendants with personal knowledge of relevant information would greatly assist the court in making an informed decision. However, plaintiff should note that defendants are not required to be present at the hearing.  Thus, if plaintiff wishes to call a defendant as a witness at the hearing, he must ask defendants' counsel whether the defendant will agree to be called as a witness by plaintiff, without requiring plaintiff to subpoena him. If defendants' counsel does not agree, plaintiff will have to follow the attached procedures for subpoenaing an unwilling unincarcerated witness if he wishes to obtain that witness's testimony.

The parties should bring with them to the hearing any documents they believe will support or defend their positions. However, documentary evidence will not be admissible unless the document is "authenticated" (that is, shown to be an accurate copy by a witness

6

who has personal knowledge of the document) or its authenticity has been stipulated to by the opposing party. To the extent that plaintiff might obtain copies of records pertaining to him from files maintained by the Department of Corrections, he will be given an opportunity to show the copies to defense counsel immediately before the hearing so that defendants can stipulate to their authenticity, if it appears appropriate to do so.

Finally, plaintiff should be aware that he will not necessarily be entitled to a transfer to a different prison even if I find that he has made a threshold showing that defendants are subjecting him to a substantial risk of serious harm. Although defendants have an obligation to protect plaintiff, the Constitution does not set forth the way they must do so. "Prison officials do not violate the Eight Amendment because the mode of protection they offer does not sit well with a prisoner. Rather, if they offer reasonable protection from the threat, they have done their duty." Dale v. Poston, 548 F.3d 563, 570 (7th Cir. 2008) (rejecting prisoner's argument that prison officials violated his Eighth Amendment rights when they failed to transfer him after he refused protective custody). Thus, even if it is determined that plaintiff's current housing situation presents an unreasonable risk to his safety, it is ultimately defendants' responsibility to decide whether transfer, protective custody or some other remedy is the best way to balance the prison's security and administrative needs with plaintiff's need to be safe.

ORDER

IT IS ORDERED that a decision on plaintiff's motion for a preliminary injunction, dkt. #12, is STAYED. A hearing on plaintiff's motion will be held on March 31, 2009, at 9:00 am. The clerk of court is directed to issue a writ of habeas corpus ad testificandum for plaintiff's presence at the hearing.

Entered this 18th day of March, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

# PROCEDURES
# FOR CALLING WITNESSES
# TO TRIAL

At trial, plaintiff will have to be ready to prove facts supporting his claims against the defendants. One way to offer proof is through the testimony of witnesses who have personal knowledge about the matter being tried. If a party wants witnesses to be present and available to testify on the day of trial, the party must follow the procedures explained below. ("Party" means either a plaintiff or a defendant.) These procedures must be followed whether the witness is:

1) A defendant to be called to testify by a plaintiff; or

2) A plaintiff to be called to testify by a defendant; or

3) A person not a party to the lawsuit to be called to testify by either a plaintiff or a defendant.

## I.  PROCEDURES FOR OBTAINING ATTENDANCE OF INCARCERATED WITNESSES WHO AGREE TO TESTIFY VOLUNTARILY

An incarcerated witness who tells a party that he is willing to attend trial to give testimony cannot come to court unless the court orders his custodian to let him come. The court must issue an order known as a writ of habeas corpus ad testificandum. This court will not issue such a writ unless the party can establish to the court's satisfaction that

1) The witness has agreed to attend voluntarily; and

2) The witness has actual knowledge of facts directly related to the issue to be tried.

A witness's willingness to come to court as a witness can be shown in one of two ways.

    a. The party can serve and file an affidavit declaring under penalty of perjury that the witness told the party that he or she is willing to testify voluntarily, that is, without being subpoenaed. The party must say in the affidavit when and where the witness informed the party of this willingness;

**OR**

    b. The party can serve and file an affidavit in which *the witness* declares under penalty of perjury that he or she is willing to testify without being subpoenaed.

The witness's actual knowledge of relevant facts may be shown in one of two ways.

    a. The party can declare under penalty of perjury that the witness has relevant information about the party's claim. However, this can be done only if the *party* knows first-hand that the witness saw or heard something that will help him prove his case. For example, if the trial is about an incident that happened in or around a plaintiff's cell and, at the time, the plaintiff saw that a cellmate was present and witnessed the incident, the plaintiff may tell the court in an affidavit what happened, when and where the incident occurred, who was present, and how the witness was in a position to see or hear what occurred;

**OR**

    b. The party can serve and file an affidavit in which *the witness* tells the court what happened, when and where the incident occurred, who was present, and how the witness was in a position to see or hear what occurred.

<u>Not later than four weeks before trial,</u> a party planning to use the testimony of an

10

incarcerated witness who has agreed to come to trial must serve and file a written motion for a court order requiring the witness to be brought to court at the time of trial. The motion must

> 1) State the name and address of the witness; and
>
> 2) Come with an affidavit described above to show that the witness is willing to testify and that the witness has first-hand knowledge of facts directly related to the issue to be tried.

When the court rules on the motion, it will say who must be brought to court and will direct the clerk of court to prepare the necessary writ of habeas corpus ad testificandum.

## II. PROCEDURE FOR OBTAINING THE ATTENDANCE OF INCARCERATED WITNESSES WHO REFUSE TO TESTIFY VOLUNTARILY

If an incarcerated witness refuses to attend trial, TWO separate procedures are required. The court will have to issue a writ of habeas corpus ad testificandum telling the warden to bring the witness to trial <u>and</u> the party must serve the witness with a subpoena.

<u>Not later than four weeks before trial</u>, the party seeking the testimony of an incarcerated witness who refuses to testify voluntarily must file a motion asking the court to issue a writ of habeas corpus ad testificandum <u>and</u> asking the court to provide the party with a subpoena form. (All requests from subpoenas from pro se litigants will be sent to the judge for review before the clerk will issue them.)

The motion for a writ of habeas corpus ad testificandum will not be granted unless the party submits an affidavit

11

1) Giving the name and address of the witness; and

2) Declaring under penalty of perjury that the witness has relevant information about the party's claim. As noted above, this can be done only if the *party* knows first-hand that the witness saw or heard something that will help him prove his case. In the affidavit, the party must tell the court what happened, when and where the incident occurred, who was present, and how the witness was in a position to see or to hear what occurred.

The request for a subpoena form will not be granted unless the party satisfies the court in his affidavit that

1) The witness refuses to testify voluntarily;

2) The party has made arrangements for a person at least 18 years of age who is not a party to the action to serve the subpoena on the witness; or

3) The party is proceeding in forma pauperis, has been unable to arrange for service of the subpoena by a person at least 18 years of age who is not a party to the action and needs assistance from the United States Marshal or a person appointed by the court.

If the court grants the party's request for a subpoena for an incarcerated witness, it will be the party's responsibility to complete the subpoena form and send it to the person at least 18 years of age who will be serving the subpoena or to the United States Marshal, if the court has ordered that the subpoena be served by the Marshal. The address of the United States Marshal is 120 N. Henry St., Suite 440, Madison, Wisconsin, 53703. If the subpoena is not received by the marshal at least two weeks in advance of trial, the marshal may not have enough time to serve the subpoena on the party's witness.

## III.  UNINCARCERATED WITNESSES WHO AGREE TO TESTIFY VOLUNTARILY

It is the responsibility of the party who has asked an unincarcerated witness to come to court to tell the witness of the time and date of trial.  No action need be sought or obtained from the court.

## IV.  UNINCARCERATED WITNESSES WHO REFUSE TO TESTIFY VOLUNTARILY

If a prospective witness is not incarcerated, and he or she refuses to testify voluntarily, <u>no later than four weeks before trial</u>, the party must serve and file a request for a subpoena form.  All parties who want to subpoena an unincarcerated witness, even parties proceeding <u>in</u> <u>forma</u> <u>pauperis</u>, must be prepared to tender an appropriate sum of money to the witness at the time the subpoena is served.  The appropriate sum of money is a daily witness fee and the witness's mileage costs.  In addition, if the witness's attendance is required for more than one trial day, an allowance for a room and meals must be paid.  The current rates for daily witness fees, mileage costs and room and meals may be obtained either by writing the clerk of court at P.O. Box 432, Madison, Wisconsin, 53703, or calling the office of the clerk at (608) 264-5156.

Before the court will grant a request for a subpoena form for an unincarcerated witness, the party must satisfy the court by affidavit declared to be true under penalty of perjury that

    1) The witness refuses to testify voluntarily;

13

2) The party has made arrangements for a person at least 18 years of age who is not a party to the action to serve the subpoena on the witness; or

3) The party is proceeding in forma pauperis, has been unable to arrange for service of the subpoena by a person at least 18 years of age who is not a party to the action and needs assistance from the United States Marshal or a person appointed by the court; and

4) The party is prepared to tender to the marshal or other individual serving the subpoena a check or money order made payable to the witness in an amount necessary to cover the daily witness fee and the witness's mileage, as well as costs for room and meals if the witness's appearance at trial will require an overnight stay.

If the court grants the party's request for a subpoena for an unincarcerated witness, it will be the party's responsibility to complete the subpoena form and send it to the person at least 18 years of age who will be serving the subpoena or to the United States Marshal, if the court has ordered that the subpoena be served by the marshal, together with the necessary check or money order. The address of the United States Marshal is 120 N. Henry St., Suite 440, Madison, Wisconsin, 53703. If the subpoena is not received by the marshal at least two weeks in advance of trial, the marshal may not have enough time to serve the subpoena on the party's witness.

## V. SUMMARY

The chart below may assist in referring you to the section of this paper which sets forth the appropriate procedure for securing the testimony of witnesses in your case.

## WITNESSES

### INCARCERATED

### UNINCARCERATED

| VOLUNTARY | INVOLUNTARY | VOLUNTARY | INVOLUNTARY |
|---|---|---|---|
| A court order that the witness be brought to court is required. Papers are due 4 weeks before trial. | A court order that the witness be brought to court and a subpoena are required. A motion must be served & filed 4 weeks before trial. Subpoena forms must be completed 2 weeks before trial. | Nothing need be sought or obtained from the court. | Pro se parties must obtain an order granting issuance of a subpoena. Papers are due 4 weeks before trial. Completed forms <u>and fees</u> are due 2 weeks before trial. |

**Revised May 2006**

CURRENT SUBPOENA RATES
(as of August, 2008)

Daily Witness Fee - $40
Milage - $0.585
Room and Meals (Per Diem) - $143

PROCEDURES FOR TRIAL EXHIBITS
IN THE WESTERN DISTRICT OF WISCONSIN

Before trial, the parties are to label all exhibits that may be offered at trial. Before the start of trial, the parties are to provide the deputy clerk with a list of all exhibits.

1. Each party is to label all exhibits with labels provided by the clerk's office.

2. If more than one defendant will be offering exhibits, that defendant should add an initial identifying the particular defendant to the label.

3. Each party is to list the exhibits on the yellow exhibit sheet provided by the clerk's office. The party should state to whom the exhibits belong, the number of each exhibit and a brief description.

4. Each party is to provide the court with the original exhibit list and a copy of each exhibit that may be offered for the judge's use.

5. As a general rules, the plaintiff should use exhibit numbers 1-500 and the defendant should use exhibit numbers 501 and up.

6. Each party is to maintain custody of his or her own exhibits throughout the trial.

7. At the end of trial, each party is to retain all exhibits that become a part of the record. It is each party's responsibility to maintain his or her exhibits and to make arrangements with the clerk's office for inclusion of the exhibits in the appeal record, if there is an appeal.

8. Each party should be aware that once reference is made to an exhibit at trial, the exhibit becomes part of the record, even though the exhibit might not be formally offered or might not be received.

Any questions concerning these instructions may be directed to the clerk's office at (608) 264-5156.

Entered this 19th day of May, 2006.

BY THE COURT:

/s/ Barbara B. Crabb

_____
BARBARA B. CRABB
District Judge

17